# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 5

| | |
|---|---|
| Pamela Neppel, individually and as the parent and legal guardian of Z.N. an incapacitated individual, | Plaintiff, Appellant and Cross-Appellee |
| v. | |
| Development Homes, Inc., | Defendant, Appellee and Cross-Appellant |
| and | |
| Sandra J. Marshall, individually; Mark Indvik, individually, and Mark and Amelia Indvik as Co-Guardians of S.K.O.; Konah Zunugo, individually, | Defendants and Appellees |

## No. 20200036

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Lolita G. Hartl Romanick, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by McEvers, Justice.

Jonathon Yunker (argued) and Jason P. Sayler (on brief), Devils Lake, ND, for plaintiff, appellant, and cross-appellee.

William J. Behrmann (argued) and Jerry W. Evenson (on brief), Bismarck, ND, for defendants, appellees, and cross-appellant.

David E. Boeck, Special Assistant Attorney General, and Mandy R. Dendy, Bismarck, ND, for amicus curiae Protection & Advocacy Project.

Murray G. Sagsveen, Bismarck, ND, for amicus curiae North Dakota Association of Nonprofit Organizations.

# Neppel v. Development Homes
## No. 20200036

**McEvers, Justice.**

[¶1]   Pamela Neppel, individually and as the parent and legal guardian of Z.N., an incapacitated individual, appeals from an amended judgment entered after a jury trial.  She also appeals from an order denying leave to amend her complaint, an order for an amended judgment, and an order denying her motion for attorney fees and costs.  Development Homes, Inc. (DHI) cross appeals from an order denying its motion for judgment as a matter of law.  We affirm the order denying Neppel leave to amend her complaint and the order denying her motion for attorney fees and costs.  We reverse the order denying DHI's motion for judgment as a matter of law, and we hold Neppel's appeal from the order for amended judgment is moot.  We remand for entry of a judgment consistent with this opinion.

I

[¶2]   Z.N. is a developmentally disabled individual who, at the time of the incident giving rise to this case, was living at a residential care facility operated by DHI.  Neppel is Z.N.'s mother.  Neppel filed this lawsuit alleging Z.N. was raped by another resident, referred to as S.O., who lived on the same floor of the facility as Z.N.'s housemate.  Neppel alleged DHI had knowledge S.O. was a sexual predator and Z.N. was susceptible to abuse, yet DHI withheld information from her about the risk of placing the two together.  Neppel also alleged DHI did not immediately report the rape or provide prompt and adequate medical care for Z.N.  Along with DHI, Neppel sued various DHI employees, as well as S.O.'s co-guardians.

[¶3]   Neppel asserted various theories of liability.  Prior to trial, Neppel filed a motion for leave to file a fourth amended complaint to add claims under the Developmental Disability Act, N.D.C.C. ch. 25-01.2, and for exemplary damages.  The district court denied the motion.  The case was tried to a jury on counts of negligence and intentional infliction of emotional distress.

1

[¶4]   At the close of Neppel's case, and again at the end of the trial, DHI moved for judgment as a matter of law on the intentional infliction of emotional distress claim.  The district court denied DHI's motions.  The jury returned a verdict awarding Neppel and Z.N. $550,000 in damages.  The jury specifically awarded Z.N. $100,000 for damages caused by DHI's negligence.  The jury also awarded Z.N. and Neppel $400,000 and $50,000 in damages, respectively, for past and future severe emotional distress caused by DHI.  The jury did not find any of the individually-named defendants liable.

[¶5]   Four days after the jury rendered its verdict, Neppel filed a motion for attorney fees.  The district court denied the motion because it was premature.  After the court entered judgment, which included interest and taxed costs and disbursements, Neppel filed a renewed motion for attorney fees and costs.  She argued she was statutorily entitled to attorney fees and costs under the Developmental Disability Act.  The court again denied her motion.

[¶6]   DHI filed a motion to amend the judgment asserting it was entitled to charitable immunity under N.D.C.C. ch. 32-03.3, which sets out liability limits for certain charitable organizations.  The court granted the motion and entered an amended judgment that applied the $250,000 charitable organization liability limit.

II

[¶7]   Neppel argues the district court erred when it denied her leave to amend her complaint.

[¶8]   Under N.D.R.Civ.P. 15, when the time for amendments as a matter of course has passed, complaints may not be amended unless there is leave of court or written consent by the opposing party.  Leave to amend a complaint "shall be freely given when justice so requires."  N.D.R.Civ.P. 15(a)(2).  A district court has "broad discretion" when deciding whether to grant leave to amend a complaint under N.D.R.Civ.P. 15(a)(2).  *Ihli v. Lazzaretto*, 2015 ND 151, ¶ 18, 864 N.W.2d 483.  We review a district court's decision on a motion for leave to amend a complaint for an abuse of discretion.  *Id.*  "[A] district court abuses its discretion when it acts in an arbitrary, unconscionable, or

2

unreasonable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *In re Hirsch*, 2014 ND 135, ¶ 12, 848 N.W.2d 719.

[¶9] Neppel amended her complaint once as a matter of course. The parties stipulated to a scheduling deadline of May 15, 2018, for motions for leave to amend the pleadings. Neppel moved for leave to amend her complaint on February 14, 2018 and again on May 15, 2018. The district court granted both motions. On December 10, 2018, Neppel sought leave to file a fourth amended complaint to state claims under the Developmental Disability Act and for exemplary damages. The court denied Neppel's motion.

[¶10] The district court, in its analysis, considered whether justice required the proposed amendment. The court also noted Neppel filed her motion roughly seven months after the deadline set out in the stipulated scheduling order and after the court had already addressed similar issues. We need not address each item the court considered, because it is not an abuse of discretion to deny an untimely motion for leave to amend a complaint. *See Ihli*, 2015 ND 151, ¶ 20 (affirming denial of motion for leave to amend complaint when stipulated scheduling deadline had passed); *Grandbois & Grandbois, Inc. v. City of Watford City*, 2004 ND 162, ¶¶ 14-15, 685 N.W.2d 129 (affirming denial of motion to amend complaint as untimely). We conclude the court did not abuse its discretion when it denied Neppel leave to file a fourth amended complaint.

### III

[¶11] Neppel argues the district court erred when it denied her motion for attorney fees and costs.

[¶12] "A successful litigant is not entitled to attorney's fees unless they are expressly authorized by statute or by agreement of the parties." *Gratech Co. v. Wold Eng'g, P.C.*, 2007 ND 46, ¶ 17, 729 N.W.2d 326. Whether an award of attorney fees and costs is warranted is a decision that is generally within the district court's discretion. *Lynch v. Sweeney*, 2007 ND 81, ¶ 9, 732 N.W.2d 377.

[¶13] Neppel claims she is entitled to attorney fees and costs under N.D.C.C. § 25-01.2-17, a provision of the Developmental Disability Act that gives the court discretion to award attorney fees and costs to a plaintiff who is successful in a "proceeding to enforce" any of the rights guaranteed by the Act. Neppel claims that by obtaining redress for Z.N.'s injuries, she successfully enforced various rights enumerated in the Act, including Z.N.'s right to adequate medical care and appropriate treatment and habilitation.

[¶14] We are not persuaded. The claims Neppel successfully asserted in the district court were for negligence and intentional infliction of emotional distress. She did not obtain a declaration that a right guaranteed by the Act was violated. Nor did she obtain injunctive relief to enforce any type of right. Section 25-01.2-17, N.D.C.C., plainly does not authorize an award of attorney fees or costs in common law tort cases that do not concern the enforcement of a right. We conclude the court did not abuse its discretion when it denied Neppel's motion for attorney fees and costs.

IV

[¶15] DHI cross appeals arguing the district court erred when it denied its motion for judgment as a matter of law on Neppel's intentional infliction of emotional distress claim. DHI argues the evidence does not support a reasonable finding that its conduct was extreme and outrageous as is required for a finding of intentional infliction of emotional distress. We agree.

[¶16] We recognized the tort of intentional infliction of emotional distress in *Muchow v. Lindbald*, 435 N.W.2d 918 (N.D. 1989). We explained it requires a finding of "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress." *Id.* at 924; *see also Hougum v. Valley Mem'l Homes*, 1998 ND 24, ¶ 26, 574 N.W.2d 812. The district court must act as a gate-keeper and initially decide, as a matter of law, whether the conduct in question can reasonably be considered "extreme and outrageous." *Hougum*, at ¶ 26; *G.K.T. v. T.L.T.*, 2011 ND 115, ¶ 9, 798 N.W.2d 872. "[I]f the district court determines that reasonable people could differ, the

4

question of whether the defendant's conduct is sufficiently extreme and outrageous is left to the trier-of-fact." *G.K.T.*, at ¶ 9.

[¶17] In *Muchow*, we explained conduct is not extreme and outrageous unless it goes beyond all possible bounds of decency:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

435 N.W.2d at 924. We have repeatedly emphasized that this is a "strenuously high" standard. *See Hysjulien v. Hill Top Home of Comfort, Inc.*, 2013 ND 38, ¶ 40, 827 N.W.2d 533.

[¶18] The rape that occurred in this case unquestionably goes beyond all possible bounds of decency. However, the relevant question is whether DHI's conduct was extreme and outrageous. Specifically, whether DHI's placement and supervision of S.O. as a housemate in the same residential facility as Z.N. constitutes extreme and outrageous conduct, as well as DHI's response to the rape.

[¶19] It is undisputed that S.O. was previously placed in a residential facility that housed minors. S.O. had acted out in that facility on a number of occasions, assaulted other residents, grabbed the genitals of staff, and was once caught "spooning" in bed with a young girl. A DHI "risk management plan" identified S.O. as having "predatory sexual behavior . . . not gender specific . . . . Typically, the target of choice is someone who is vulnerable or willing." Because S.O. was turning eighteen he was ineligible to continue living in the facility housing the other youth and different accommodations were necessary.

5

[¶20] Prior to S.O.'s arrival, one staff member had supervised Z.N and another resident. Witnesses testified that S.O.'s placement on the same floor as Z.N. resulted in each individual having their own specific staff member. A "behavioral intervention plan" specifically required S.O. to have one-on-one staffing. That plan set out specific instructions for staff on how to mitigate the risks caused by S.O.'s behaviors.

[¶21] Witnesses, including an employee from the North Dakota Department of Human Services, testified that DHI conducted the move in cooperation with the State of North Dakota, whose approval of the placement was required. The evidence presented at trial was sufficient to establish that DHI, as well as representatives from the Department of Human Services, had knowledge S.O. had some propensity to act aggressively and sexually. There is no dispute that the mitigation measures put in place by the Department of Human Services and DHI failed. However, there is also no evidence that suggests the mitigation measures were designed to fail, nor does the evidence suggest DHI knew with certainty that they would. The placement decision may have been unwise or negligent, but we cannot say it amounts to intentional or reckless and "atrocious" or "utterly intolerable" behavior meant to injure Z.N or Neppel.

[¶22] The evidence presented at trial also supports a finding that DHI's response to the rape was delayed and inadequate. The staff member on duty did not immediately report the rape; she waited until the next morning. Nor did she ensure S.O. was separated from Z.N. afterwards. A witness testified they watched television together later that night. The responding law enforcement officer testified he believed DHI was "circling the wagons" and giving him "no real answers." Z.N. did not receive medical attention until days later, only after his mother insisted he get it. There was also evidence indicating DHI had implemented an on-call system where a supervisor would be immediately available in the case of an emergency. It is undisputed that the staff member on duty at the time did not follow that protocol. However, there is no evidence to establish DHI's delayed provision of medical care caused Z.N. additional or exacerbated physical injuries. A witness testified that when Z.N. was examined by a doctor, no physical injuries were observed, and he was discharged without additional care.

6

[¶23] Based on our review of the record, we conclude the evidence does not support a reasonable finding that DHI's conduct was extreme and outrageous. Neppel presented evidence that DHI's placement decision created a measure of risk, DHI allowed the mitigation plan to fail, and its staff did not follow protocol. DHI's conduct could be described as careless, unreasonable, delayed, inadequate and negligent. But, as a matter of law, that is not the type of conduct that satisfies our strenuously high extreme and outrageous standard, which requires intentional or reckless conduct exceeding all possible bounds of decency. We hold the district court erred when it denied DHI's motion for judgment as a matter of law.

V

[¶24] Neppel argues the district court erred when it granted DHI's motion to amend the judgment. The court concluded DHI qualified as a charitable organization under N.D.C.C. ch. 32-03.3, and it ordered an amended judgment applying the $250,000 charitable organization liability limit set out at N.D.C.C. § 32-03.3-02. Neppel claims it was procedurally and substantively improper for the court to apply charitable immunity in this case. Our holding in part IV results in DHI's liability in an amount less than $250,000, and therefore the charitable immunity liability limit is no longer applicable. Given our holding, Neppel's appeal from the order for an amended judgment is moot and we will not address it. *See Onstad v. Jaeger*, 2020 ND 203, ¶ 10, 949 N.W.2d 214 ("Generally this Court does not address issues that are moot.").

VI

[¶25] We have considered the parties' remaining arguments and conclude they are without merit or unnecessary to our decision.

VII

[¶26] We affirm the district court order denying Neppel leave to amend her complaint and the order denying Neppel's motion for attorney fees and costs. We reverse the district court order denying DHI judgment as a matter of law.

7

We hold Neppel's appeal from the order for an amended judgment is moot. We remand for entry of a judgment consistent with this opinion.

[¶27] Jon J. Jensen, C.J.
　　　 Gerald W. VandeWalle
　　　 Daniel J. Crothers
　　　 Lisa Fair McEvers
　　　 Jerod E. Tufte