# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 53

Lance Hagen,                                    Petitioner, Appellee, and Cross-Appellant

      v.

North Dakota Insurance
Reserve Fund,                          Respondent, Appellant, and Cross-Appellee

## No. 20210111

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable John W. Grinsteiner, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justice VandeWalle joined. Justice Crothers filed an opinion concurring in part and dissenting in part, in which Justice McEvers joined.

Paul R. Sanderson, Bismarck, N.D., for petitioner, appellee, and cross-appellant.

Zachary E. Pelham (argued) and Kirsten Tuntland (appeared), Bismarck, N.D., for respondent, appellant, and cross-appellee.

**Tufte, Justice.**

[¶1] North Dakota Insurance Reserve Fund ("NDIRF") appeals from a judgment and orders granting Lance Hagen's amended petition for a writ of mandamus requiring NDIRF to disclose documents under the open records law. NDIRF argues the amended petition was untimely, NDIRF is not a public entity subject to open records requests, and the documents sought are protected from disclosure under our court rules. Hagen cross appeals, arguing the district court erred by not requiring NDIRF to disclose all of the documents he sought and by denying him costs and attorney's fees.

[¶2] We affirm in part, concluding the amended petition was timely, NDIRF is a public entity for purposes of the open records law, and the records sought are not exempt from disclosure. We reverse the part of the judgment and orders excluding records from disclosure, and remand to the district court to review in camera those previously excluded records and those records identified in Appellant's Brief ¶ 72 to determine whether they are exempt from disclosure under the potential liability exception in N.D.C.C. § 44-04-19.1(8). We affirm the denial of costs and attorney's fees.

I

[¶3] NDIRF is a nonprofit corporation organized in North Dakota as a government self-insurance pool that offers liability, automobile, and property risk coverage to political subdivisions. The City of Lincoln (the "City") is a member of NDIRF and was sued by a landowner in 2015 for inverse condemnation. NDIRF provided the City a defense of the lawsuit under the terms of coverage. After a trial, the district court concluded a taking had occurred by the City. We affirmed the taking in *Lincoln Land Dev., LLP v. City of Lincoln*, 2019 ND 81, 924 N.W.2d 426.

[¶4] In October 2019, Hagen requested documents from NDIRF relating to *Lincoln Land*, including a mediation statement, and emails and status reports between the City, the City's attorney, and NDIRF. That same month, NDIRF

responded, denying Hagen's request on grounds of attorney work product and attorney-client privilege.

[¶5] In November 2019, Hagen petitioned the district court for a writ of mandamus requiring NDIRF to disclose the documents. Hagen failed to include the records request with his petition as required by statute. After a hearing, the court allowed Hagen to amend his petition, which he did in August 2020. NDIRF objected to the amendment as untimely and moved to dismiss the petition. The court denied NDIRF's motion to dismiss, overruled its objections, made partial findings on the amended petition, and ordered an in camera review of the requested records. After the in camera review, the court ordered NDIRF to disclose some of the requested documents, excluding others from disclosure. The court denied Hagen's request for costs and attorney's fees.

II

[¶6] NDIRF argues the amended petition was untimely. Under N.D.C.C. § 44-04-21.2(1), the action must be brought within sixty days of the date the person knew or should have known of the open records violation, and the complaint must be accompanied by a dated, written request for the requested record.

[¶7] The original petition in this case was filed within sixty days of NDIRF denying Hagen the requested records (i.e., the alleged violation). Although the original petition referenced the records request, the petition was not accompanied by the dated, written request itself. After oral argument on the petition, the district court permitted Hagen to amend his petition to include his records request. No other amendments were allowed by the order, and Hagen amended his petition accordingly. NDIRF argues, because the amended petition was beyond the sixty-day statute of limitations, the court erred by not dismissing the amended petition.

[¶8] Rule 5.2, N.D.R.Ct., applies to petitions for a writ of mandamus and provides that a court may make appropriate orders, including allowing amendment of the petition. N.D.R.Ct. 5.2(c)(3)(A). Rule 15(a)(2), N.D.R.Civ.P., allows a party to amend its pleading with leave of the court, which "shall be freely given when justice so requires." District courts have broad discretion

when deciding whether to grant leave to amend a complaint under N.D.R.Civ.P. 15(a)(2). *Neppel v. Dev. Homes, Inc.*, 2021 ND 5, ¶ 8, 953 N.W.2d 642. A court "abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Id.*

[¶9] "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." N.D.R.Civ.P. 15(c)(1)(B). Amendments that merely correct technical deficiencies relate back to the original pleading. 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 1497 (3d ed. 2021). Whether an amended pleading relates back to the date of the original pleading under N.D.R.Civ.P. 15(c)(1)(B) is a question of law, which we review de novo. *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012); *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989); *ASARCO LLC v. Goodwin*, 756 F.3d 191, 202 (2d Cir. 2014).

[¶10] The district court concluded the amended petition did not assert any new claims, but rather corrected the technical deficiency of filing the records request. The original petition specifically identified the dated records request, and NDIRF admitted to having received the records request in its answer. Thus, NDIRF had notice of the records being requested and the claims being asserted from the filing of the original petition. The action was brought in a timely manner upon filing of the original petition, and because the amended petition merely corrected a technical deficiency, it relates back to the date of the original petition. We conclude the court did not abuse its discretion in allowing Hagen to amend his petition or err in concluding the amended petition relates back to the date of the original petition.

## III

[¶11] The Constitution of North Dakota protects the right to access and inspect public records:

Unless otherwise provided by law, all records of public or governmental bodies, boards, bureaus, commissions, or agencies of the state or any political subdivision of the state, or organizations or agencies supported in whole or in part by public funds, or expending public funds, shall be public records, open and accessible for inspection during reasonable office hours.

N.D. Const. art. XI, § 6. The open records statutory scheme similarly provides, "Except as otherwise specifically provided by law, all records of a *public entity* are public records, open and accessible for inspection during reasonable office hours." N.D.C.C. § 44-04-18(1) (emphasis added).

[¶12] NDIRF argues the district court erred by concluding it was a *public entity* subject to the open records law. Statutory interpretation is a question of law, fully reviewable on appeal. *Kuntz v. State*, 2019 ND 46, ¶ 31, 923 N.W.2d 513. "Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears." *Id.* "Words and phrases must be construed according to the context and the rules of grammar and the approved usage of the language." *Id.* Statutes are construed as a whole and are harmonized to give meaning to related provisions. *Id.*

A

[¶13] "Public entity" means, in part, all:

Public or governmental bodies, boards, bureaus, commissions, or *agencies of any political subdivision* of the state and any entity created or recognized by the Constitution of North Dakota, state statute, executive order of the governor, resolution, ordinance, rule, bylaw, or executive order of the chief executive authority of a political subdivision of the state to exercise public authority or perform a governmental function[.]

N.D.C.C. § 44-04-17.1(13)(b) (emphasis added).

[¶14] The City of Lincoln is a political subdivision. *See* N.D.C.C. § 44-04-17.1(11). Political subdivisions may protect themselves against risk by self-insuring, by purchasing coverage from an insurance company, or by uniting

4

with other political subdivisions in order to purchase liability insurance or to self-insure. N.D.C.C. § 32-12.1-07. "Any two or more entities that have united to self-insure against their legal liability under chapter 32-12.1 or any state agency that unites with another state agency or political subdivision, or both, to self-insure against their legal liabilities are subject to the provisions of this chapter [26.1-23.1]." N.D.C.C. § 26.1-23.1-01. NDIRF is organized as a government self-insurance pool. "Any government self-insurance pool organized under chapter 32-12.1 is not an insurance company or insurer" and the "coverages provided by such pools and the administration of such pools do not constitute the transaction of insurance business." N.D.C.C. § 26.1-23.1-02. Thus, NDIRF is not an insurance company or insurer, and the coverages it provides to its members and its administration of the pool do not constitute the transaction of insurance business.

[¶15] NDIRF contends that although it is organized as a government self-insurance pool, it is not an agency of the City or its other political subdivision members.

[¶16] "We give respectful attention to the attorney general's opinions and follow them when we find them persuasive." *Kuntz*, 2019 ND 46, ¶ 29. A 1999 attorney general opinion concluded NDIRF is a public entity, stating NDIRF "performs a governmental function as an agent or agency of its political subdivision-members." N.D. Op. Att'y Gen. 99-O-02, at 7 (April 5, 1999). "NDIRF's function is no different from that of the governing body of a political subdivision which elects to establish an individual self-insurance fund, except that NDIRF is the governing authority designated to administer pool funds on behalf of numerous participating members." *Id*. at 4 (quoting N.D. Att'y Gen. Letter to Solberg (Aug. 2, 1991)).

[¶17] The Legislature has provided no statutory definition of "agencies" as it appears in N.D.C.C. § 44-04-17.1(13)(b). In *Grand Forks Herald, Inc. v. Lyons*, 101 N.W.2d 543, 546 (N.D. 1960), we construed the term "agencies" as used in a prior, but materially-similar, open records statute to mean a relationship "created by law or contract whereby one party delegates the transaction of some lawful business to another."

[¶18] In *Forum Publishing Co. v. City of Fargo*, 391 N.W.2d 169, 170 (N.D. 1986), the Forum Publishing Company requested the City of Fargo furnish it with the job applications for the open chief of police position. Personnel Decisions, Inc. (PDI), a consulting firm, was hired by the City of Fargo to evaluate the applicants. *Id.* After being denied the requested applications, the Forum sought a writ of mandamus to compel the City of Fargo to disclose the applications. *Id.* The district court granted the writ, and the City of Fargo appealed, arguing that the applications were not "records" under the open records law and that PDI was an independent contractor rather than an agent of the City of Fargo. *Id.* at 171-72. We rejected these arguments, concluding the applications were subject to the open records law and the independent contractor/agent distinction was irrelevant because vicarious liability was not at issue in the case. *Id.* at 172. Citing *Grand Forks Herald*, we construed "agencies" to mean "a relationship created by law or contract whereby one party delegates the transaction of some lawful business to another." *Forum Publ'g*, at 172. We held PDI was an agent of the City of Fargo for purposes of the open records law, noting:

> PDI was hired by the City to screen and evaluate candidates for a public office. If the City had undertaken this task without hiring PDI, the applications would clearly have been subject to the open-record law. We do not believe the open-record law can be circumvented by the delegation of a public duty to a third party, and these documents are not any less a public record simply because they were in the possession of PDI.
>
> . . . Th[e] purpose of the open-record law would be thwarted if we were to hold that documents so closely connected with public business but in the possession of an agent or independent contractor of the public entity are not public records.

*Id.*

[¶19] NDIRF argues *Forum Publishing* is dissimilar to this case because it was the City of Fargo that was ordered to disclose the public records, not the third party, PDI. *Forum Publishing* is instructive here to show the consistent construction we have given the term "agencies" in our open records law. NDIRF

6

has not provided, nor do we discern, any amendment to the open records law that altered the meaning of "agencies" as we construed the term in *Forum Publishing* and *Grand Forks Herald*. The dissent is properly concerned that a typical business relationship between a corporation and a government entity should not bring the corporation within the scope of "public entity" under the open records law. Dissent, at ¶ 33 ("But simply doing business with governmental entities should not determine whether NDIRF is a 'public entity'...."); ¶ 41 ("NDIRF is a standalone business...."); ¶ 42 ("NDIRF has a business relationship with participating governments."); ¶ 43 ("[T]he fact that a corporation does business with a public entity does not make that private company a public entity."). On that broad proposition, we agree. But NDIRF is not an ordinary private company offering services on the open market to both public entities and private parties. NDIRF provides services exclusively to its political subdivision members—the same government entities that created it, own it, and control its board of directors. N.D.C.C. § 26.1-23.1-03. Nothing we say here would apply the open records law to every business that provides goods or services to the government. Applying this construction, we conclude the City and NDIRF entered into "a relationship created by law or contract whereby one party delegates the transaction of some lawful business to another," and thus under N.D.C.C. § 44-04-17.1(13)(b), NDIRF is an agency of its participating political subdivisions, including the City.

B

[¶20] NDIRF asserts that the adjectives "public or governmental" in N.D.C.C. § 44-04-17.1(13)(b) modify each noun in the list of covered entities and that NDIRF is not a *public or governmental* entity. Under the prior version of the statute, a divided Court analyzed the grammatical effect of these words. *Compare Adams Cty. Record v. Greater N.D. Ass'n*, 529 N.W.2d 830, 838 n.2 (N.D. 1995) (plurality opinion) (concluding they do not modify the nouns), *with id.* at 843 (Meschke, J., dissenting) (concluding they do modify the nouns). Here, we conclude it is unnecessary to determine whether these adjectives modify the noun "agencies" in N.D.C.C. § 44-04-17.1(13)(b). Although NDIRF is organized as a nonprofit corporation, that organizational structure "does not convert a joint enterprise of public entities into a separate private entity." N.D.

7

Op. Att'y Gen. 99-O-02, at 5, 7 (April 5, 1999) (relying on this Court's decisions in *Forum Publishing* and *Grand Forks Herald* and prior attorney general opinions concluding "public entity" encompassed joint enterprises by counties and soil conservation districts). NDIRF is a *government* self-insurance pool, not a private insurance company or insurer. Assuming without deciding that NDIRF must be shown to be "public or governmental" to satisfy the definition, NDIRF is both an agency of the City and a government self-insurance pool, and thus the requirement is satisfied. N.D.C.C. § 44-04-17.1(13)(b). We conclude NDIRF is a public entity within the meaning of the statute.

IV

[¶21] NDIRF argues that even if it is a public entity, the requested records are exempt under our court rules protecting attorney work product, confidential mediation statements, and attorney-client privilege.

[¶22] Generally, attorney work product is exempt from public disclosure. N.D.C.C. § 44-04-19.1(1); *see also* N.D.C.C. § 44-04-19.1(6) (defining attorney work product). However, once litigation for a public entity ends, attorney work product must be made available for public disclosure unless an exception applies:

> Following the final completion of the civil or criminal litigation or the adversarial administrative proceeding, including the exhaustion of all appellate remedies, attorney work product must be made available for public disclosure by the public entity, unless another exception to section 44-04-18 applies or if disclosure would have an adverse fiscal effect on the conduct or settlement of other pending or reasonably predictable civil or criminal litigation or adversarial administrative proceedings, or the attorney work product reflects mental impressions, opinions, conclusions, or legal theories regarding potential liability of a public entity.

N.D.C.C. § 44-04-19.1(8). It is undisputed the records requested by Hagen include attorney work product, and the litigation that the attorney work product was prepared in anticipation for or in relation to has ended. *See Lincoln Land*, 2019 ND 81.

8

[¶23] Under N.D.C.C. § 44-04-19.1(8), attorney work product must be made available after the final completion of litigation unless another exception to N.D.C.C. § 44-04-18 applies. Section 44-04-18(1), N.D.C.C., provides, "*Except as otherwise specifically provided by law*, all records of a public entity are public records . . . ." (Emphasis added.) NDIRF contends our court rules on attorney work product, confidential mediation statements, and attorney-client privilege are exceptions provided by *law*. However, N.D.C.C. § 44-04-17.1, provides, "As used in this section through section 44-04-32: . . . 8. 'Law' includes federal statutes, applicable federal regulations, and state statutes." Because the term "law" as used in N.D.C.C. § 44-04-18(1) does not specifically include court rules in its definition, we conclude the plain meaning of "provided by law" under N.D.C.C. § 44-04-18(1) does not operate to create additional open records exemptions arising from court rules defining privileges and discovery limitations. This conclusion is further supported by the existence of the narrow exemption in § 44-04-18(6) permitting a public entity that is party to litigation to deny an open records request from another party if the requested record is privileged under applicable discovery rules.

[¶24] NDIRF cites *Lamb v. State Bd. of Law Examiners*, 2010 ND 11, ¶ 7, 777 N.W.2d 343, for the proposition that a rule promulgated by the Court is "law." In *Lamb*, we analyzed whether Admission to Practice R. 13 (exempting confidential bar examination information from disclosure) was an exception provided *by law* under N.D.C.C. § 44-04-18(1) and N.D. Const. art. XI, § 6 ("Unless otherwise provided by law," public records are open and accessible). *Lamb*, at ¶¶ 5-6. We held both the statute and the constitutional provision allowed Admission to Practice Rule 13 to provide an exception to the general rule of public records being open and accessible. *Id.* at ¶¶ 6-7. While we noted that N.D.C.C. § 44-04-18.8 was consistent with Admission to Practice Rule 13, we held Admission to Practice Rule 13 was adopted by the Court under N.D. Const. art. VI, § 3, and controlled the records sought in that case. *Lamb*, at ¶¶ 6-7, 11. Here, NDIRF argues only that N.D.C.C. § 44-04-18(1) provides an avenue for the court rules to be exceptions to the general disclosure rule. As defined by the Legislature, "law" as used in N.D.C.C. § 44-04-18(1) does not

include court rules. Thus, the court rules NDIRF invokes do not provide an exception under N.D.C.C. § 44-04-18(1).

[¶25] NDIRF also contends the attorney-client privilege protects the requested records, exempting them from disclosure. Generally, "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made for the purpose of facilitating the rendition of professional legal services to the client . . . ." N.D.R.Ev. 502(b). An exception to the general rule includes "a communication between a public officer or agency and its lawyers." N.D.R.Ev. 502(d)(7). NDIRF argues the City has asserted attorney-client privilege, and N.D.R.Ev. 502(d)(7) does not apply because the City is not a "public officer or agency." We note that NDIRF has not provided a basis for its ability to assert the City's privilege, and has provided no factual or legal support that the City has asserted its privilege. *See* N.D.R.Ev. 502(c) (providing who may claim attorney-client privilege). NDIRF also provides no authority that the City is not a public agency or that its employees or officials are not public officers. Any confidential communication to or from the City is necessarily through its employees (public officers). Further, Rule 502 is an evidentiary rule applicable to court proceedings, *see* N.D.R.Ev. 101(a), and does not create a specific exception to the open records law under N.D.C.C. § 44-04-18(1). *See Scott v. Smith*, 728 S.W.2d 515, 515-16 (Ark. 1987) (rejecting argument that Rule 502, attorney-client privilege, provides an exception to the Arkansas Freedom of Information Act); *McCambridge v. City of Little Rock*, 766 S.W.2d 909, 912 (Ark. 1989) (concluding Rule 502 "has no application outside of court proceedings and, therefore, cannot create an exception to a substantive act"). Thus, the attorney-client privilege does not apply to the requested records.

V

[¶26] In his cross-appeal, Hagen argues the district court misapplied N.D.C.C. § 44-04-19.1(8) to the excluded records. Section 44-04-19.1(8), N.D.C.C., makes attorney work product available following completion of the underlying litigation, unless "disclosure would have an adverse fiscal effect on the conduct or settlement of other pending or reasonably predictable civil or criminal

10

litigation or adversarial administrative proceedings" ("fiscal effect exception"), "or the attorney work product reflects mental impressions, opinions, conclusions, or legal theories regarding potential liability of a public entity" ("potential liability exception"). In the court's order on the amended petition for writ of mandamus, the court analyzed and applied N.D.C.C. § 44-04-19.1(8), and compared the potential liability exception to "opinion work product," which includes "counsel's mental impressions, conclusions, opinions or legal theories" (quoting *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000)). The potential liability exception is limited to attorney work product that reflects the mental impressions, opinions, conclusions, or legal theories *regarding potential liability of a public entity*. Thus, not all opinion work product satisfies the potential liability exception. It is unclear from the order whether the court applied the potential liability exception or merged the exception with opinion work product, failing to appreciate the potential liability element.

[¶27] Hagen argues the potential liability exception does not apply to any of the records he requested because the City has no potential liability as a result of disclosing the records. NDIRF does not dispute the underlying litigation in *Lincoln Land* is final, but argues the potential liability of the public entity should be determined as of the time the record was created, meaning the record would remain exempt after the risk of liability no longer exists. NDIRF contends the City faced potential liability when the communication with counsel originally occurred and therefore the records continue to be exempt from disclosure. We find NDIRF's interpretation unpersuasive because the statute's general rule that attorney work product must be made available for disclosure following litigation would be swallowed by the exception. *See Sorenson v. Felton*, 2011 ND 33, ¶ 15, 793 N.W.2d 799 (stating we interpret statutes to "give meaning and effect to every word, phrase, and sentence, and do[ ] not adopt a construction which would render part of the statute mere surplusage"). NDIRF argues attorney work product "continues to be attorney work product forever" because it was prepared in anticipation of litigation at a time when the public entity was facing potential liability. We conclude past liability cannot form the basis for the potential liability exception. A determination of whether a record is exempt under the potential liability

11

exception must be made at the time the request is pending. If the potential for liability is entirely in the past, the record is no longer exempt. Only if the records relate to circumstances for which there remains a genuine potential for liability may the records remain exempt. However, because we cannot discern whether the district court applied the potential liability element, we reverse the part of the judgment and orders excluding records from disclosure, and remand to the district court to review those previously excluded records in camera to determine whether they are exempt from disclosure under the potential liability exception. NDIRF contends some of the records that the court ordered to be disclosed are protected from disclosure under the potential liability exception. *See* Appellant's Brief ¶ 72. We direct the court to review these records as well under the potential liability exception.

VI

[¶28] Hagen argues the district court erred in denying him costs and attorney's fees under N.D.C.C. § 44-04-21.2(1), which provides, "If a court finds that [N.D.C.C. § 44-04-18] ha[s] been violated by a public entity, the court may award . . . costs, disbursements, and reasonable attorney's fees against the entity. For an intentional or knowing violation . . . the court may also award damages in an amount equal to one thousand dollars or actual damages caused by the violation, whichever is greater." Under this statute, awarding costs and attorney's fees is discretionary with the district court, and we will not reverse its decision absent an abuse of discretion. *See Gratech Co., Ltd. v. Wold Eng'g, P.C.*, 2007 ND 46, ¶ 18, 729 N.W.2d 326.

[¶29] The court concluded that NDIRF made "reasonable, non-frivolous arguments resisting disclosure" of the requested records. We agree. Before this case, the issue of whether NDIRF is a public entity subject to record requests had not been decided by a court. Although NDIRF may rely on relevant attorney general opinions in performing its duties, we have not said it has a duty to follow the attorney general's guidance rather than consult its own counsel. *Cf. N.D. Fair Housing Council, Inc. v. Peterson*, 2001 ND 81, ¶ 40, 625 N.W.2d 551 (explaining "attorney general's opinions guide state officers until superseded by judicial opinions"); *State ex rel. Johnson v. Baker*, 21 N.W.2d

12

355, 364 (N.D. 1945) (state officers who are entitled to an attorney general's opinion but do not follow it "act at their peril"). Moreover, NDIRF is within its rights to challenge the analyses and conclusions of an attorney general opinion and argue to a court why its actions were warranted by existing law or provide a non-frivolous, good-faith argument for the extension, modification, or reversal of existing law. *See generally* N.D.C.C. § 28-26-01(2) (requiring a court to award costs and attorney's fees for a frivolous claim, but not requiring an award against a party "advancing a claim unwarranted under existing law, if it is supported by a good-faith argument for an extension, modification, or reversal of the existing law"). We conclude the court did not abuse its discretion in denying Hagen's request for costs and attorney's fees.

## VII

[¶30] We have considered the remaining arguments and conclude they are either without merit or unnecessary to our decision. We affirm the judgment and orders in part, concluding the amended petition was timely, NDIRF is a public entity for purposes of the open records law, and the records sought are not exempt from disclosure under our court rules. We reverse the part of the judgment and orders excluding records from disclosure, and remand to the district court to review in camera those previously excluded records and the documents identified in Appellant's Brief ¶ 72 to determine whether they are exempt from disclosure under the potential liability exception in N.D.C.C. § 44-04-19.1(8). We affirm the denial of costs and attorney's fees.

[¶31] Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Jerod E. Tufte


**Crothers, Justice, concurring in part and dissenting in part.**

[¶32] I concur in Part II of the majority opinion concluding Hagen's amended petition was timely, and Part VI denying Hagen's recovery of attorney's fees. I respectfully dissent from Part III concluding NDIRF is a "public entity" under

13

North Dakota's open records laws, and requiring it to produce documents. My disposition of this case would make the remaining parts of the majority opinion unnecessary.

[¶33] NDIRF is not an insurance company or an insurer, and the Fund is not engaged in "the transaction of insurance business." Majority opinion, ¶ 14; N.D.C.C. § 26.1-23.1-03. Yet NDIRF provides "insurance coverage," not as an insurance company, but as a statutorily authorized entity that *can* be created to provide insurance coverage to its members. N.D.C.C. § 26.1-23.1-01. If a pool is created, the pool participants must be governmental bodies. *Id*. But simply doing business with governmental entities should not determine whether NDIRF is a "public entity"—as the majority appears to conclude. *See* majority opinion ¶ 20.

[¶34] North Dakota law requires disclosure of records of a public entity. A "public entity" is defined as:

> Public or governmental bodies, boards, bureaus, commissions, or agencies of any political subdivision of the state and any entity created or recognized by the Constitution of North Dakota, state statute, executive order of the governor, resolution, ordinance, rule, bylaw, or executive order of the chief executive authority of a political subdivision of the state to exercise public authority or perform a governmental function[.]

N.D.C.C. 44-04-17.1(13)(b). NDIRF does not fit this definition.

[¶35] NDIRF is not a public or governmental body, board, bureau, or commission. It is a non-profit corporation.

[¶36] NDIRF is not an agency of any political subdivision. It is a nonprofit corporation created under the authority of statute to provide pooled insurance coverage to member governmental entities. *See* N.D.C.C. § 26.1-23.1-01 *et seq*.

[¶37] NDIRF is not "created or recognized by the Constitution of North Dakota, state statute, executive order of the governor, resolution, ordinance, rule, bylaw, or executive order of the chief executive authority of a political

14

subdivision of the state." N.D.C.C. § 44-04-17.1(13)(b). Rather, creation of a self-insurance pool is authorized by statute. However, the creation of a pool being "authorized" by law is distinctly different from holding the resulting entity—the North Dakota Insurance Reserve Fund—constitutes an "entity created or recognized" by law. *Id.*

[¶38] NDIRF also was not created to "exercise public authority or perform a governmental function." N.D.C.C. 44-04-17.1(13)(b). NDIRF instead exists to provide insurance coverage, manage claims, and to create and manage an insurance pool out of which the participants' claims are administered.

[¶39] In determining whether NDIRF is a public entity, the majority does not consider the portions of the enabling statutes providing as follows:

> Government self-insurance pools may only provide coverage of the following types for pool members, their officers, employees, and agents:
> a. Casualty insurance, including general, public officials, and professional liability coverages.
> b. Automobile insurance, including motor vehicle liability insurance coverage, security for motor vehicles owned or operated as required by chapter 26.1-41, and protection against other liability and laws associated with the ownership of motor vehicles and automobile physical damage coverages.
> c. Property insurance, including inland marine coverage, money and securities coverage, and extra expense coverage. However, this subdivision does not authorize government self-insurance pools to write those types of insurance coverages offered by the state fire and tornado fund under the provisions of chapter 26.1-22 as they existed on December 31, 1988, unless a government self-insurance pool enters a contract with the commissioner to provide services for the state fire and tornado fund under section 26.1-22-03.
> d. Other coverages authorized by the commissioner and necessary to a pool's membership.

N.D.C.C. § 26.1-23.1-01(1).

[¶40] The majority also does not account for the fact NDIRF is regulated by the North Dakota Insurance Commissioner, N.D.C.C. § 26.1-23.1-03, just like private insurance companies are regulated.

[¶41] Before a pool can operate, the Commissioner must receive and approve a financial plan for the "insurance coverages to be offered," its cash reserves, and whether it has reinsurance or insurance for excess claims. N.D.C.C. § 26.1-23.1-03(1). The pool must file a management plan with the Commissioner showing it has established a governing authority as set forth in articles of incorporation. N.D.C.C. § 26.1-23.1-03(2)(a). The management plan must outline the governing authority's responsibility for "fixing contributions to the pool by participating government political subdivisions, maintaining reserves, levying and collecting assessments for deficiencies, disposing of surplus, and administering the pool in the event of termination or insolvency." N.D.C.C. § 26.1-23.1-03(2)(b). Therefore, NDIRF does not simply write checks for liability claims made against government-members. Rather, NDIRF is a standalone business, organized as a non-profit corporation, created to provide what the legislature called "insurance coverage" to participating entities.

[¶42] As a provider of insurance coverage, NDIRF has a business relationship with participating governments. This litigation relates to coverage provided by NDIRF to the City of Lincoln. Due to their business relationship, NDIRF likely hold records that are subject to Lincoln's obligation to release them. *See* majority opinion, ¶¶ 15-19; *Forum Publishing Co. v. City of Fargo,* 391 N.W.2d 169, 171-72 (N.D. 1986) (addressing what constitutes a public record). However, the fact NDIRF holds records that may be subject to public disclosure does not make NDIRF a "public entity." Rather, it means public records remain public records, no matter whose hands hold those records. *Id.* at 172 ("We do not believe the open-record law can be circumvented by the delegation of a public duty to a third party, and these documents are not any less a public record simply because they were in the possession of [the city's contractor].").

[¶43] While I agree the law does not permit City of Lincoln to hide its public records in the hands of a third party, to the extent the majority uses NDIRF's business relationship with City of Lincoln to conclude NDIRF is a public entity,

I disagree with that analysis. Rather, the fact that a corporation does business with a public entity does not make that private company a public entity. It merely means the public records remain public, even when held by a third party. Otherwise, every private company that only (or even primarily) contracts with governmental bodies to pave a street, patch a water pipe, or fix a street light is a "public entity" for purposes of the open records law. That is not what the law says or intends.

[¶44] Daniel J. Crothers
      Lisa Fair McEvers