LaVonne J. MUCHOW, Willard Muchow, Jeffrey S. Muchow, Chad Muchow, Todd Muchow, Douglas E. Muchow, Susan Steidl, Leslie P. Muchow, and Steven Muchow, Plaintiffs and Appellants,

v.

James R. LINDBLAD, a Detective in the Police Department of the City of Fargo in both his official and individual capacities; and the City of Fargo, a political subdivision of the State of North Dakota, Defendants and Appellees.

Civ. No. 880135.

Supreme Court of North Dakota.

Feb. 10, 1989.

Craft, Thompson & Boechler, Fargo, for plaintiffs and appellants; argued by David

C. Thompson. Appearance by Jeanette Boechler.

Cahill & Maring, P.A., Moorhead, Minn., for defendants and appellees; argued by Steven J. Cahill.

LEVINE, Justice.

Virginia Muchow's parents, LaVonne and Willard Muchow, and her siblings, Susan Steidl, Jeffrey, Chad, Todd, Douglas, and Steven Muchow [plaintiffs], appeal from a summary judgment dismissing their complaint against Detective James R. Lindblad of the Fargo Police Department and the City of Fargo for intentional or negligent infliction of emotional distress stemming from the investigation of Virginia's death. We affirm.

Because summary judgment was granted against the plaintiffs, our recitation of the facts is in the light most favorable to the plaintiffs. On September 15, 1984, Virginia's body was discovered in the Red River in Fargo. At the time of her death, Virginia was thirty-seven years old. The investigating officer, Detective Lindblad, had previously arrested Virginia for shoplifting and had investigated a theft of money from her. Virginia, who suffered from brain damage as a result of a birth injury, had told Lindblad that her family did not love her and that she would kill herself by "walking in the river." Virginia had also told members of her family that she would commit suicide by drowning herself.

Without conducting any serious investigation and despite obvious signs of foul play, Lindblad immediately concluded that Virginia committed suicide by drowning herself. Lindblad described to the plaintiffs the grim details of Virginia's suicide. He also told them that Virginia's body was found nude when in fact her body was partially clothed. An autopsy was not immediately performed because Lindblad informed the coroner that Virginia's death was suicide.[1] The plaintiffs questioned the cause of Virginia's death when they learned of objective evidence of foul play that directly contradicted Lindblad's version of the death. However, Lindblad accused the plaintiffs of questioning his determination of suicide merely to assuage their feelings of guilt for not having given Virginia support and love while she was alive. Approximately one month after Virginia's death, her body was exhumed at the request of the plaintiffs and an autopsy was performed which established that Virginia had died from strangulation. A Fargo man was ultimately charged with murder and acquitted.

The plaintiffs sued Lindblad and the City of Fargo, alleging that Lindblad negligently, recklessly or intentionally failed to conduct a serious investigation of Virginia's death and negligently, recklessly or intentionally gave them false information about her death, causing them to suffer severe emotional anxiety and concomitant physical impact, including loss of sleep and loss of weight.

1. Although no autopsy was immediately performed, the coroner dictated a report two days after the death which provided, in part:

"With her examination—head wise, I saw no abnormalities except a laceration and very superficial over her left eyebrow. She had an old cut over her posterior ear which was bandaged. She also had some aspirate over the mouth. I saw nothing to indicate any kind of head trauma and certainly nothing that I could see that would cause a problem with unconsciousness or death. There was no trauma to her eyes other than her eyelid. She had no bleeding from her ears and her dentition was intact. Neck and chest area were again nonconsequential. Extremities, she had no evidence of any obvious signs of struggle without blood on her nails or skin under the nails or broken nails. Her abdominal exam,

again no bruises were noted as with her back exam, nothing consequential. Genitalia, I saw nothing indicating a laceration or anything that I can see that would indicate any type of rape or forced entry. As well, her lower extremities, I saw no abnormalities.

"In discussing this case with the detective, he felt fairly certain that this was either accidental or suicidal type of phenomenan [sic]. He was, in his quesioning [sic], satisfied that this was not suspicious for homicide. Certainly, I do not see anything indicative on my examination of her of any bruises which would cause unconsciousness and death. I would have to term her death as either suicidal or accidental, more than likely suicidal with the deceased speaking of terminating herself."

The defendants moved for summary judgment, asserting immunity for Lindblad's discretionary acts, the absence of bodily harm to the plaintiffs necessary for a claim for negligent infliction of emotional distress, and the absence of extreme and outrageous conduct necessary for a claim for intentional infliction of emotional distress.

The district court granted the defendants' motion for summary judgment and dismissed the plaintiffs' complaint. The court concluded that the plaintiffs' allegation of severe emotional distress qualified as a "personal injury" exception to governmental immunity under Section 32–12.1–03(3), N.D.C.C.[2] The court also concluded as a matter of law that the plaintiffs' loss of weight and sleep did not meet the requirement of bodily harm necessary to recover for negligent infliction of emotional distress. Finally, the court concluded as a matter of law that the plaintiffs did not establish two of the threshold requirements of intentional infliction of emotional distress because Lindblad's conduct was not extreme and outrageous and the plaintiffs' emotional distress was not severe. The plaintiffs appealed, raising the following issues:

1) physical manifestation of bodily harm is not necessary to recover for negligent infliction of emotional distress because of the well-recognized exception relating to conduct concerning the next-of-kin of a seriously ill or recently deceased person,

2) physical manifestation of bodily harm is not necessary to recover for negligent infliction of emotional distress under the minority rule, and

3) Lindblad's conduct met the threshold requirements of an action for intentional infliction of emotional distress.

Our review is governed by well-established summary judgment standards. A motion for summary judgment should be granted only if, viewing the evidence in the light most favorable to the party against whom it is sought, there is no genuine issue of material fact and the party seeking summary judgment is entitled to judgment as a matter of law. Rule 56(c), N.D.R. Civ.P.; e.g., Northern Trust Co. v. Buckeye Petroleum Co., 389 N.W.2d 616 (N.D. 1986). Summary judgment is appropriate if there is no dispute as to a material fact or if no reasonable differences of opinion exist as to inferences to be drawn from undisputed facts. American State Bank of Killdeer v. Hewson, 411 N.W.2d 57 (N.D.1987); Gowin v. Hazen Memorial Hospital Ass'n, 349 N.W.2d 4 (N.D.1984). A party resisting a motion for summary judgment must present competent admissible evidence by deposition, affidavit or otherwise to demonstrate the existence of a material factual issue. Gowin v. Hazen Memorial Hospital Ass'n, supra.

Historically,[3] the recognition and identification of the requirements of an independent claim for infliction of emotional distress have troubled courts because emotional distress may be real and serious in some situations, while trivial, feigned, or imagined in others. Although emotional distress has been recognized as a constituent element of damages only recoverable along with other damages in tort actions for assault, battery, false imprisonment, malicious prosecution, seduction, and wrongful death, the existence of an independent, legally protectable interest in emotional tranquility or a legally enforceable duty not to interfere with that interest has not been historically recognized. Annot., 38 A.L.R.4th 998 (1985); Annot., 64 A.L.R.2d 100 (1959); Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv.L.Rev. 1033 (1936); Prosser, Inten-

---

**2.** On appeal the defendants do not contend that the district court erred in applying the personal injury exception to governmental immunity, and we express no opinion on the district court's determination.

**3.** For a discussion of the historical development of recovery for infliction of emotional distress

see Payton v. Abbott Labs, 386 Mass. 540, 437 N.E.2d 171 (1982), and Fournell v. Usher Pest Control Co., 208 Neb. 684, 305 N.W.2d 605 (1981) (Krivosha, Chief Justice, dissenting) overruled in part, James v. Lieb, 221 Neb. 47, 375 N.W.2d 109 (1985).

tional Infliction of Mental Suffering, A New Tort, 37 Mich.L.Rev. (1939); Prosser & Keaton on Torts, §§ 12, 54 (5th ed.1984).

Recently, we have added to this list so that damages for emotional distress are recoverable by parents of a severely injured minor child as a constituent element of damages for loss of society and companionship. *Jacobs v. Anderson Building Co.*, 430 N.W.2d 558 (N.D.1988) [on petition for rehearing]; *see also Hopkins v. McBane*, 427 N.W.2d 85 (N.D.1988) [damages for mental anguish and loss of society and companionship are recoverable by mother in an action for the wrongful death of a viable fetus]. However, in a case involving only a claim for emotional and mental shock induced solely by a plaintiff's apprehension of a negligently caused injury to a third person, a plaintiff may not recover damages for emotional and mental anguish unless the negligent act threatened the plaintiff with harm or placed her within the zone of danger. *Whetham v. Bismarck Hospital*, 197 N.W.2d 678 (N.D. 1972). Although we have allowed damages for emotional distress as a constituent element of other damages, we have not specifically analyzed the elements of an independent action for either negligent or intentional infliction of emotional distress. *See Sadler v. Basin Elec. Power Co-op*, 409 N.W.2d 87 (N.D.1987); *Thiele v. Lindquist & Vennum*, 404 N.W.2d 52 (N.D.1987); *Ouren v. Krebsbach*, 338 N.W.2d 836 (N.D. 1983); *Schleicher v. Western State Bank of Devils Lake*, 314 N.W.2d 293 (N.D.1982); *Smith v. American Family Mutual Ins. Co.*, 294 N.W.2d 751 (N.D.1980); *Eakman v. Robb*, 237 N.W.2d 423 (N.D.1975). *See also Hanke v. Global Van Lines, Inc.*, 533 F.2d 396 (8th Cir.1976).

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

A majority of jurisdictions follows the Restatement 2d Torts § 436A (1965)[4] and requires bodily harm to recover for negli-

gent infliction of emotional distress. Prosser & Keaton on Torts, *supra*, § 54; 38 Am.Jur.2d, Fright, Shock, and Mental Disturbance, §§ 1, 3 (1968); *see Payton v. Abbott Labs*, 386 Mass. 540, 437 N.E.2d 171 (1982), fn. 5.

The bodily harm essential to sustain a claim for relief for negligent infliction of emotional distress is defined in Restatement 2d Torts § 15 (1965) as "any physical impairment of the condition of another's body, or physical pain or illness." Bodily harm may be caused not only by impact or trauma, but also by emotional stress. *Payton v. Abbott Labs, supra;* Restatement 2d Torts § 436(2) (1965). Comment c. of the Restatement 2d Torts § 436A (1965) further explains the nature of the requisite "bodily harm":

> "The rule stated in this Section applies to all forms of emotional disturbance, including temporary fright, nervous shock, nausea, grief, rage, and humiliation. The fact that these are accompanied by transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm. On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character. This becomes a medical or psychiatric problem, rather than one of law."

We do not believe the evidence introduced by the plaintiffs in opposition to the motion for summary judgment raises a reasonable inference of the bodily harm necessary for a claim for negligent infliction of emotional distress under the majority rule. The plaintiffs alleged that they

**4.** Section 436A provides:
"If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance."

suffered "severe emotional anxiety and concomitant physical impact, including loss of sleep and loss of weight." Some of the plaintiffs testified by deposition that they lost some weight and sleep after Virginia's death. Assuming that that loss of weight and sleep was caused by Lindblad's conduct and not by Virginia's death, the plaintiffs presented no evidence to raise a reasonable inference that their loss of sleep and weight was anything other than a transitory physical phenomenon. We agree with the district court's characterization of the loss of sleep and weight as transitory and inconsequential and therefore, not "bodily harm." Comment c. Section 436A Restatement 2d Torts. We therefore conclude that the district court correctly determined that the plaintiffs failed to raise a reasonable inference that they suffered the "bodily harm" necessary for recovery under negligent infliction of emotional distress.

The plaintiffs acknowledge that Section 436A expresses the majority rule that bodily harm is necessary to recover for negligent infliction of emotional distress. However, they assert that the phrases "[i]n general" and "any other invasion of the other's interests" found in comment a. of the Restatement 2d Torts § 313 (1965)[5] provide an exception to that rule for unusual circumstances. The plaintiffs contend that emotional distress is presumed in cases involving unusual circumstances, which include the well-recognized exception for a telegraph company's negligent mishandling of a message concerning the death or serious illness of next-of-kin and a funeral home's negligent mishandling of the corpse of next-of-kin. The plaintiffs argue that Lindblad's conduct is similar to that in the telegraph and funeral home

cases and justifies a presumption of emotional distress without a showing of bodily harm.

The defendants respond that the telegraph and funeral home cases are inapposite because liability in those cases is based upon a contractual duty. The defendants point to a telegraph case from the Dakota Territory, *Russell v. Western Union Telegraph Co.*, 3 Dak. 315, 19 N.W. 408 (1884), in which the Territorial Supreme Court held that damages for mental distress may be recovered only if the plaintiff has sustained personal injury.

There is a split of authority on the issue of whether an action for emotional distress without accompanying bodily harm is authorized where a telegraph company negligently delays or misdelivers a message relating to death or serious illness of next-of-kin. *See, e.g., Mentzer v. Western Union Telegraph Co.*, 93 Iowa 752, 62 N.W. 1 (1895), and cases cited therein. We adhere to the decision in *Russell v. Western Union Telegraph Co., supra*, 3 Dak. at 318, 19 N.W. at 409, where the plaintiff alleged that he suffered mental anguish because the defendant failed to deliver a message in a timely manner:

"There is nothing in this complaint that shows how any damages, even of the character claimed, could have been sustained by the plaintiff.... The complaint alleges a contract, and a violation of said contract, as the gist of the action, and it must be so regarded, and cannot be converted into a tort by any rule of law known to the court. No case can be found where a person has been allowed to recover damages for a shock, injury, or outrage to the feelings and sensibilities arising and caused by the breach of a contract, except it is a marriage con-

---

**5.** Section 313 provides, in relevant part:

"(1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor

"(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

"(b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm."

Comment a of Section 313 provides:

"The rule stated in ... Section [313] does not give protection to mental and emotional tranquillity in itself. In general, as stated in § 436 A, there is no liability where the actor's negligent conduct inflicts only emotional distress, without resulting bodily harm or any other invasion of the other's interests...."

tract. Such damages can only enter into and become a part of the recovery when the plaintiff has sustained, by the negligence or willful act of another, some corporal or personal injury; they never can be recovered independently and alone, and, if recoverable at all, only in actions of tort."

■ Moreover, the funeral home cases that allow recovery in tort for emotional distress without bodily harm are premised upon the common law rule that any unwarranted interference with the right to burial constitutes an actionable wrong. Annot., 48 A.L.R.3d 261, 264 (1973); 22A Am. Jur.2d, Dead Bodies, § 13 (1988). *See* Restatement 2d Torts § 868 (1979). The unusual circumstances associated with the right to burial serve as a guarantee of genuine and serious mental distress. Prosser & Keaton on Torts, *supra*, § 54 at 362. The instant case involves the police investigation of a death, rather than the interference with the right to burial. We are not persuaded that the unusual circumstances surrounding the right to burial are analogous to the police investigation of a death so as to warrant an exception to the bodily harm requirement. Consequently, we conclude that the funeral home cases are not applicable to this case.

■ Alternatively, the plaintiffs urge us to follow the minority "trend" and abolish the bodily harm requirement as illogical and unjust. The defendants acknowledge that several of the cases relied upon by the plaintiffs have abolished the bodily harm requirement. However, they point out that most of those cases require evidence of "serious" or "severe" emotional distress, and in this case, the plaintiffs have not presented any medical or psychiatric evidence to raise even a reasonable inference that they have suffered "severe" or "serious" emotional distress.

While a minority of jurisdictions has dispensed with the bodily harm requirement for negligent infliction of emotional distress, [*see St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649 (Tex.1987), fn. 3.], those jurisdictions nonetheless require "serious" or "severe" emotional distress in place of bodily harm. *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980) [severe emotional distress]; *Rodrigues v. State*, 52 Hawaii 156, 472 P.2d 509 (1970) [severe emotional distress]; *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo.1983) [emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant]; *Schultz v. Barberton Glass Co.*, 4 Ohio St.3d 131, 447 N.E.2d 109 (1983) [serious emotional distress]; *Johnson v. Supersave Markets, Inc.*, 211 Mont. 465, 686 P.2d 209 (1984) [in determining whether distress is compensable, look at whether tortious conduct results in substantial invasion of a legally protected interest and causes a significant impact upon plaintiff].

Assuming, arguendo, that we would follow the minority view, we do not believe that the plaintiffs have satisfied the threshold of severe or serious emotional distress necessary for negligent infliction of emotional distress. They have pointed to nothing in the record that supports a reasonable inference that they have suffered "severe" or "serious" emotional distress.

We therefore conclude that the plaintiffs have presented no issues of material fact concerning their claim for negligent infliction of emotional distress, and the district court properly granted summary judgment as a matter of law on that claim.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The plaintiffs next contend that the district court erred in granting summary judgment on their claim for intentional infliction of emotional distress under Section 46, Restatement 2d Torts (1965).[6] There are three elements of the tort of intentional infliction of emotional distress under Sec-

---

6. Section 46 provides:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

tion 46: (1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress.

The plaintiffs argue that the district court erred in determining that Lindblad's conduct was not extreme and outrageous so as to fulfill the first criterion. The defendants concede that Lindblad's conduct was crude and insensitive, but maintain it was not so atrocious as to meet the threshold of extreme and outrageous conduct necessary for intentional infliction of emotional distress.

■ We have already held that the plaintiffs have not raised a reasonable inference of severe or serious emotional distress necessary to support a claim for negligent infliction of emotional distress. However, with regard to a claim for intentional infliction of emotional distress, the degree of outrageousness of a defendant's conduct may itself be important evidence of severe emotional distress necessary to support a claim for intentional infliction of emotional distress. Comments j. and k. of the Reporter's Notes of § 46 of the Restatement 2d Torts. Consequently, we examine whether Lindblad's conduct meets the threshold of extreme and outrageous conduct.

Comment d. of the Reporter's Notes of § 46 of the Restatement describes the substance of the element of extreme and outrageous conduct and makes clear that it is narrowly limited to outrageous conduct which exceeds "all possible bounds of decency":

> "The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency,

and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

> "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt."

Comment h. of the Reporter's Notes of § 46 of the Restatement describes the function of the court in determining extreme and outrageous conduct:

> "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability."

■ Lindblad's investigation may have been negligent. But, given his prior experience with Virginia, we do not believe it may reasonably be regarded as outrageous in character and extreme in degree so as to exceed all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. For the same reason, Lindblad's statements that the plaintiffs only questioned his determination of suicide because of their guilt, while inconsiderate and unkind, may not reasonably be regarded as extreme and outrageous conduct. The plaintiffs acknowledged that Virginia had complained that nobody loved or cared about her and that she had said that she would kill her-

self by "walking in the river." Lindblad's conduct toward the plaintiffs in this case may not have been his finest hour; however, we do not believe it rises to the level of egregious conduct necessary to sustain an action for intentional infliction of emotional distress.

The plaintiffs rely on *Hanke v. Global Van Lines, Inc.*, 533 F.2d 396 (8th Cir. 1976), which we believe is distinguishable. In *Hanke*, the plaintiff contacted the Rochester, New York representative of Global Van Lines and explained her desire to move to Grand Forks, emphasizing that prompt delivery of her furniture by August 13 was essential. Global assured the plaintiff that it could make the delivery and picked up her furniture on July 26. On that date Global again reassured the plaintiff that prompt delivery would be made as promised. During the next four months Global made repeated assurances to the plaintiff, a Grand Forks newspaper, and the Interstate Commerce Commission that the shipped items would arrive in a short time; however, partial deliveries of the items were not made until October and November and at least one item was never delivered.

In reversing summary judgment in favor of Global Van Lines for intentional infliction of emotional distress,[7] the Eighth Circuit emphasized that the case hinged upon Global's subsequent false statements and the repeated assurances to the plaintiff, a newspaper, and a governmental agency that the items were on their way and would soon be delivered. The court concluded that reasonable men might differ as to whether Global's crass indifference and repeated false assurances of imminent delivery might lead an average person to exclaim "outrageous." However, we do not believe that reasonable persons could differ as to whether Lindblad's conduct in this case was extreme and outrageous.

Accordingly, we conclude that the district court properly granted the defendants' motion for summary judgment on the claim of intentional infliction of emotional distress as a matter of law.

The district court judgment is affirmed.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.

---

7. The court of appeals also reversed summary judgment in favor of Global for negligent infliction of emotional distress. Although the court's analysis of that claim did not discuss the bodily harm requirement, the plaintiff had alleged that she was hospitalized for nine days for a mental breakdown.