# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2025 ND 64

Joe Killoran, Lora Killoran, Maple Valley Ag
Products, LLC, and Maple Valley Ag Chemicals, Inc.,   Plaintiffs and Appellants

v.

Kip Kaler,                                            Defendant and Appellee

### No. 20240290

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Theodore T. Sandberg, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Bahr, Justice.

Zane P. Aubert (argued), Jack E. Zuger (appeared), and Peter J. Gleekel (on brief), St. Paul, MN, for plaintiffs and appellants.

John W. Harkins IV (argued), Billings, MT, and Benjamin J. Sand (appeared), Bismarck, ND, for defendant and appellee.

**Bahr, Justice.**

[¶1]   Joe Killoran and Lora Killoran, along with their businesses, Maple Valley Ag Products, LLC, and Maple Valley Ag Chemical, Inc. (collectively "the Killorans"), appeal from a district court judgment dismissing with prejudice their complaint against Kip Kaler. On appeal, the Killorans argue the court misapplied N.D.R.Civ.P. 12(b)(6) and erred in dismissing their causes of action for slander, intentional infliction of emotional distress (IIED), and unlawful interference with business. We affirm in part, reverse in part, and remand.

I

[¶2]   The Killorans sued Kaler alleging three causes of action: slander, IIED, and unlawful interference with business. Paragraphs 3 through 7 are a summary of the complaint's allegations.

[¶3]   Joe and Lora Killoran are entrepreneurs and businesspersons who own and operate two businesses: Maple Valley Ag Chemical, Inc. (the "Corporation") and Maple Valley Ag Products, LLC (the "Company"). Joe and Lora Killoran operate their businesses in Tower City, North Dakota, and Buffalo, North Dakota. Given the populations of Tower City and Buffalo—less than 300 and 200 people, respectively—Joe and Lora Killoran's reputations in the community are important to them.

[¶4]   The Maple Valley Oil Association Co-op (the "Co-op") was formed in 1982 by Joe Killoran's father with a primary business of selling fuel to its owners. In 1999, Joe Killoran took over his father's position as manager of the Co-op. In 2020, oil refineries had a surplus of fuel, and the market price of fuel significantly declined. Joe Killoran projected the Co-op would face significant losses due to the low price of fuel. As such, with the approval of the Co-op board members, Joe Killoran transferred money from the Company to the Co-op to offset the predicted losses. This resulted in a large debt owed to the Company by the Co-op.

1

[¶5]   In April 2023, the Co-op held a board meeting. The attendees included Kip Kaler, the Co-op's attorney; businesspersons in the local community; and customers of the Corporation and Company. During the board meeting, "Kaler told everyone in attendance to not do business with the Killorans because they were crooks and thieves."

[¶6]   In June 2023, the Co-op held an annual meeting. Attendees included Kaler, Joe and Lora Killoran, members of the board, customers of the Corporation and Company, and businesspersons in the community. Kaler spoke in front of everyone in attendance calling Joe and Lora Killoran "untrustworthy, crooks, and thieves," and telling the meeting attendees "not to do business with the Killorans."

[¶7]   Kaler's statements against Joe and Lora Killoran's character at the board and annual meetings were false. Since Kaler's statements at the board and annual meetings, the Corporation and the Company have seen a significant decrease in revenue and profits. The Killorans have suffered significant harm due to Kaler's statements, including reputational harm, economic losses, and mental distress.

[¶8]   Kaler moved to dismiss the complaint under N.D.R.Civ.P. 12(b)(6). The district court granted Kaler's motion. As to the slander claim, the court determined the claim was not well-pled. The court found the Killorans "failed to sufficiently plead any fact for any statement made by Kaler[,]" did not provide factual support of what Kaler said at the April 2023 meeting, and failed to adequately plead falsity of the June 2023 statement. The court dismissed the IIED claim, finding "[t]he facts alleged [d]o not constitute conduct sufficiently extreme and outrageous to permit recovery." Dismissing the unlawful interference with business claim, the court explained that, without the slander and IIED claims, the Killorans did not have an independent tort to support a claim for unlawful interference with business.

II

[¶9]   "Under N.D.R.Civ.P. 8(a), a pleading that states a claim for relief must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Krile v. Lawyer*, 2022 ND 28, ¶ 28, 970 N.W.2d 150. "Although

2

a concise and non-technical complaint is all that is required by N.D.R.Civ.P. 8(a), a complaint nevertheless must be sufficient to inform and notify the adversary and the court of the pleader's claim." *Id.* (quoting *Erickson v. Brown*, 2008 ND 57, ¶ 16, 747 N.W.2d 34). "Rule 8 does not require the complaint to have detailed factual allegations, but allegations that are merely conclusory statements unsupported by factual allegations are not sufficient to state a cause of action. Well-pleaded factual allegations are entitled to an assumption of truth, but conclusions unsupported by factual allegations are not." *Id.* (cleaned up). "If the pleadings indicate generally the type of claim involved, they satisfy the spirit of Rule 8(a), N.D.R.Civ.P." *Williams v. State*, 405 N.W.2d 615, 621 (N.D. 1987).

[¶10] "The legal sufficiency of a claim is tested by a motion to dismiss under N.D.R.Civ.P. 12(b)(6)." *Severance v. Howe*, 2023 ND 197, ¶ 8, 997 N.W.2d 99 (quoting *Puklich v. Puklich*, 2022 ND 158, ¶ 7, 978 N.W.2d 668). Our standard for reviewing a district court's decision granting dismissal under N.D.R.Civ.P. 12(b)(6) is well established:

> In an appeal from a motion to dismiss under N.D.R.Civ.P. 12(b)(6), the complaint is construed in the light most favorable to the plaintiff and well-pleaded allegations are accepted as true. A court's scrutiny of pleadings should be deferential to the plaintiff, unless it is clear there are no provable facts entitling the plaintiff to relief. Rule 12(b)(6) motions are viewed with disfavor and should be granted only if it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted. The district court's decision will be reviewed de novo on appeal. The court's decision dismissing the complaint will be affirmed if we cannot discern a potential for proof to support it.

*Krile*, 2022 ND 28, ¶ 16 (cleaned up).

### III

[¶11] The Killorans argue the district court erred in dismissing their defamation claim. First, they assert the court erred in dismissing the complaint on grounds not raised by Kaler in his motion to dismiss. Second, the Killorans assert the court did not properly apply the notice pleading standards when addressing Kaler's motion to dismiss.

3

## A

[¶12] Kaler moved to dismiss the Killorans' slander claim on three grounds: Kaler's comments were protected by qualified privilege; the Killorans are limited-purpose public figures; and the Killorans did not sufficiently plead malice. The district court did not address any of the issues raised in Kaler's motion. Rather, the court specifically declined to address whether Kaler's alleged statements were privileged, concluding the Killorans' slander claim failed to state a claim upon which relief could be granted.

[¶13] In *Albrecht v. First Fed. Sav. & Loan Ass'n of Grand Forks & Minot*, 372 N.W.2d 893, 894 (N.D. 1985), this Court addressed "whether the district court had the authority to dismiss with prejudice sua sponte the [plaintiffs'] complaint." After looking to federal court's interpretations of the Federal Rules of Civil Procedure, "we adopt[ed] the principle articulated by the federal courts that a court may, of its own initiative, note the inadequacy of a complaint and dismiss it for failure to state a valid claim." *Id.* We noted "this power must be exercised most sparingly and with great care to protect the rights of the respective parties[,]" agreeing "with the caveat that a sua sponte dismissal is a radical step, not to be taken lightly." *Id.* at 894-95; *see also Ennis v. Dasovick*, 506 N.W.2d 386, 389 (N.D. 1993) ("A trial court may, on its own initiative, and in the cautious exercise of its discretion, dismiss a complaint for failure to state a valid claim under Rule 12(b), N.D.R.Civ.P."); *Patten v. Green*, 397 N.W.2d 458, 459 (N.D. 1986) ("The district court may, on its own initiative, and in the cautious exercise of its discretion, dismiss a complaint for failure to state a valid claim."). However, sua sponte, or on its own motion, does not mean without notice. Citing federal precedent, in *City of Jamestown v. Snellman*, 1998 ND 200, ¶ 10, 586 N.W.2d 494, we noted that "when a court dismisses an action sua sponte, it is still required to give the parties notice of its intent to do so and an opportunity to respond." "Following *Snellman*, it is settled law in North Dakota that in both criminal and civil cases, a court seeking to dismiss a case without a prior motion from the parties must give the parties adequate notice and an opportunity to respond." *Zink v. Enzminger Steel, LLC*, 2011 ND 122, ¶ 17, 798 N.W.2d 863.

[¶14] Here, a motion was pending. However, the motion was based on different grounds than the ground the district court relied on to dismiss the slander claim. Thus, the court was required to give the parties notice of its intent to dismiss on the new ground and provide them the opportunity to respond. The record does not indicate the court gave the parties notice and the opportunity to respond before dismissing the slander claim on a ground not raised by Kaler. Kaler does not argue the court gave notice. Rather, he argues the court reached the correct result on other grounds and requests this Court affirm the dismissal on the grounds raised to the district court.

[¶15] We conclude the district court erred in dismissing the Killorans' slander claim on a ground not raised by Kaler when the court did not give the parties notice of its intent to do so and provide the parties the opportunity to address the new ground for dismissal.

B

[¶16] The Killorans assert the district court did not properly apply the notice pleading standards when addressing Kaler's motion to dismiss. We address this issue because it is likely to arise on remand, the court already addressing it sua sponte. *Northstar Ctr., LLC v. Lukenbill Fam. P'ship, LLLP*, 2024 ND 212, ¶ 27, 17 N.W.3d 1; *Wollan v. Innovis Health, LLC*, 2024 ND 169, ¶ 15, 11 N.W.3d 1.

[¶17] Under the North Dakota Constitution, every person "may freely write, speak and publish his opinions on all subjects, being responsible for the abuse of that privilege." N.D. Const. art. I, § 4. Every person also has the right of protection from defamation. N.D.C.C. § 14-02-01. Defamation consists of slander and libel. N.D.C.C. § 14-02-02. "Slander is a false and unprivileged publication other than libel" that, in relevant part:

> 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;
> . . .
> 3. Tends directly to injure the person in respect to the person's office, profession, trade, or business, either by imputing to the person general disqualifications in those respects which the office or other occupation peculiarly requires, or by imputing something with

reference to the person's office, profession, trade, or business that has a natural tendency to lessen its profits; [or]

. . .

5. By natural consequence causes actual damage.

N.D.C.C. § 14-02-04. "Allegedly defamatory matter communicated to a third party is a publication." *Norberg v. Norberg*, 2017 ND 14, ¶ 27, 889 N.W.2d 889 (quoting *Emo v. Milbank Mut. Ins. Co.*, 183 N.W.2d 508, 512 (N.D. 1971)). "A publication must be false to be defamatory." *Thompson-Widmer v. Larson*, 2021 ND 27, ¶ 15, 955 N.W.2d 76 (quoting *Schmitt v. MeritCare Health Sys.*, 2013 ND 136, ¶ 11, 834 N.W.2d 627).

[¶18] Addressing the April 2023 board meeting, the district court wrote, "The Complaint does not specify the names, titles, roles, or duties of any other attendees at the April, 2023 Co-op board meeting." Similarly, addressing the June 2023 annual meeting, the court wrote, "Again, the Complaint does not specify the names, titles, roles, or duties of any other attendees at the June, 2023 co-op annual meeting." Later, the court noted, "There are no names, affidavits, or conformational information as to who specifically was present at either meeting aside from Kaler (at both), and the Killorans (at the June 2023 annual meeting)." Returning to who was present at the meetings, the court later noted, "Plaintiffs provide a general list of the type of people present at the meeting while still failing to name names[.]"

[¶19] Next, the district court addressed the statements allegedly made by Kaler. The court stated that "neither statement is pleaded as a direct quotation." It explained, "The Complaint has no quotation marks affixed to Kaler's alleged statements. The lack of quotation marks creates only a question of potential ambiguity about what exactly was said by Kaler in each of the two alleged statements."

[¶20] The district court then proceeded to make findings regarding the statements:

> As to the June, 2023 Meeting, the Court finds that based upon the written text as found in the Complaint lacking quotation marks affixed to Kaler's alleged statements; coupled with the Plaintiffs'

admission that the Plaintiffs do not actually know, recall, or remember the exact statements allegedly made by Kaler at this June, 2023 meeting; coupled with the complete lack of any other source of information relating to Kaler's alleged statement at that meeting, all result in this Court's finding that the Plaintiffs have failed to adequately allege facts plausibly demonstrating they are entitled to relief under a theory of slander. Foremost and critically, the Court finds that the Plaintiffs have not pled any facts showing their own direct knowledge of Kaler's statements at the April 2023 meeting. The Killorans do not say they were personally present at that event, and thus the Complaint is interpreted to mean Plaintiffs [did] not personally hear Kaler's alleged statement. As noted above, the Plaintiffs have neither pled, subsequently briefed, nor orally presented any person who did indeed hear the alleged statements at the Co-op Board meeting. There are no names provided by the Plaintiffs, much less any affidavit, deposition transcript, letter, text, or even an email indicating that anyone actually heard the words spoken by Kaler at the April 2029 board meeting. And, as gleaned from the Plaintiffs' complaint coupled with the admitted lack of specific knowledge of Kaler's April 2023 statements, the Plaintiffs do not appear to have been personally present at the April 2023 board meeting or even know with any degree of certainty what was said, if anything, by Kaler at this meeting. Instead, Plaintiffs present unconfirmed, unnamed, and unsubstantiated hearsay (e.g., if they were not present, from whom did they hear the comment?) as a fact in their complaint.

On the other hand, Plaintiffs plead they were present at the June 2023 annual meeting. Unlike the facts relating to the April 2023 meeting, Plaintiffs' presence at the June meeting does not hinge on unsubstantiated hearsay. However, again, the Plaintiffs' fail to provide confirmation—even from their own recollections and memories—as to what Kaler actually said in June, 2023. The representations made to the Court at the hearing are unimpressive— they do not recall the exact language or words used by Kaler. Regarding the June 2023 statement, Plaintiffs merely present their best guess at what Kaler might have actually said, as best they can recall at this time. And once again, this is where the Plaintiff both begins and ends their factual presentation on the relevant contents of Kaler's words, because there are no facts alleged in the Complaint fleshing out the statements made. No names of witnesses were provided by the Plaintiffs, never mind affidavits, deposition

7

transcripts, letters, texts, or even an email indicating that anyone actually heard the words spoken by Kaler at the June 2023 meeting.

[¶21] After finding "[t]here is no factual support for any allegation in the Complaint which purports to allege what Kaler said at the April 2023 meeting," the district court stated:

> At best, the Plaintiffs rely on hearsay as a basis for this claim—but even in that scenario the Plaintiffs have entirely failed to name any specific person with knowledge of the contents of the statements made by Kaler at the April 2023 meeting; making the April 2023 allegation at best unsubstantiated, unverified, and unsupported hearsay.

[¶22] Turning to the statements allegedly made by Kaler at the June 2023 meeting, the district court explained:

> The Plaintiffs have pled that they were personally present at the June 2023 Co-op Annual meeting, which buttresses the pleadings regarding Kaler's statements at this meeting as being (at least) based upon the Plaintiffs' first-hand knowledge and not unsubstantiated hearsay. However, the Plaintiffs failed to plead what exactly Kaler actually said on June 2023, and confirmed that their factual assertion in their Complaint was actually a best-guess recollection (as per the comments made at the hearing by counsel).

[¶23] Next, the district court addressed the truthfulness of Kaler's alleged statements, stating:

> Presuming arguendo that the June 2023 Kaler-statement was exactly or nearly-exactly the language posited in the Complaint, some exploration of the truthfulness of language must be completed. The Complaint specifically pleads that Kaler said the Killorans were "untrustworthy, crooks, thieves, and told the Annual Meeting attendees not to do business with the Killorans." It is already established that the Plaintiffs are unable to affirm this as the exact language, which makes the process of determining falsity somewhat fraught. Did Kaler actually declare to one and all assembled persons that the Killorans were indeed untrustworthy, crooks, thieves, and not to do business with them? Or did Kaler say something similar

8

but not those words? For instance, did Kaler actually say that the Killorans' business practices were inherently self-serving to support their own business ventures and therefore the Killorans were not good stewards of the Co-op's business and finance? Did Kaler perhaps say something akin to, "They just take for themselves, the Co-op should avoid their businesses." The Court does not know, because the Plaintiffs do not know, and thus the problem: What was said, and is there a misunderstanding, or a problem with context? Was it a joke or a light off-hand remark? The Court does not know because the Plaintiffs have not pled it. The purpose of the well-pleaded complaint rule is to give a defendant notice of the allegation and the stakes of the litigation. As the Complaint stands, the lack of context fails to give the Defendant notice of the allegation.

[¶24] The district court also questioned Kaler's relationship with the Co-op, asking, "What was Kaler doing at these meeting[s]?" Later, it stated:

There is nothing contained within the Complaint indicating when Kaler began as the Co-op's attorney, what his role as "attorney" was in relation to the Co-op (retained counsel, counsel hired for one matter, or hired by the Co-op's ordinary counsel to assist in some but not all of the Co-op's legal dealings). The Court finds that the Plaintiffs have failed to plead the extent of Kaler's involvement with the Co-op, how long he had been with the Co-op, and most importantly how Kaler would have known any of the facts pled in paragraphs 10 [through] 79 [of the complaint].

The court continued:

Taking a broad view, perhaps maybe it could be presumed that Kaler was the long-time, well-informed, historically-aware attorney for the Co-op, but there is no basis for this presumption any more than there might be a basis to presume Kaler only represented the Co-op on a single limited legal matter. The point is this: How would Kaler know of the facts outlined in the Complaint' paragraphs 10-79, and whether they were true or not, and thence to make a statement based on his own drawn conclusions from those same facts purposely saying a false statement? This Court does not know, because the Plaintiffs failed to plead facts speaking to Kaler's relationship with the Co-op. How can Kaler make a knowingly false statement without proof of knowledge held by Kaler of the alleged

9

truth? This is an open question for which the Plaintiffs' pleadings and argument provide no answer.

. . . .

In the final analysis, the Court must ask: Would Kaler even know the truth or falsity of the statement, if in fact he made that statement in June 2023? Based on the Court's analysis of the Complaint, and the lack of any factual allegation of a relationship between Kaler and the Plaintiffs, and the lack of information as to the extent of Kaler's relationship as a lawyer to the Co-op, there is no showing that Kaler would have known the truthfulness of the statement when he is alleged to have made it; or at the very least there is no way of ascertaining what Kaler knew based on the scant factual pleadings before the Court.

[¶25] After concluding "the requirement of falsity is inadequately pleaded," the district court decided to explore whether a person in Kaler's "same or similar circumstance (a strawman standing in Kaler's exact place in this scenario) could or would have known the June 2023 statement to be false if that same 3rd person strawman was inferred to have been fully aware of the factual recitation provided" in the complaint. The court concluded:

In reviewing those paragraphs, this Court notes that there is certainly a fair bit of cross-pollination of the individual Plaintiffs, the corporate Plaintiffs, and the Co-op's business over a number of years. There certainly could be a plausible conclusion to be drawn from the Plaintiffs' own historical recitation that the Plaintiffs manipulated multiple business ventures for their own gain to the ultimate detriment of the Co-op. It is a reasonable conclusion that a person solely representing the Co-op's interests (the non-Kaler strawman) might look askew at the Plaintiffs' business practices where they concern the Co-op. And it is a reasonable conclusion that a lawyer representing and therefore advising and counseling the Co-op leadership and membership must be permitted to give advice and counsel on potential business relationships. And from there, it is further reasonable that the attorney for the Co-op might, upon knowledge of the aforementioned historical background, recommend staying away from entities which are plausibly more inclined to protect their own business interests than the Co-op's interests. Accordingly, the Court does not rule that the underlying

10

theme (if not the exact language) of the alleged June 2023 statement was *de facto* false.

[¶26] The district court proceeded to find "that there is a very plausible point of view which could consider the Plaintiffs' actions . . . as draining the Co-op of assets, funds and business to their own advantage." It then stated:

> [T]he Court finds that the Plaintiffs could be misrepresenting the June 2023 statement, or they misunderstood the statement, or they simply didn't like the statement, and then reduced Kaler's statement to the Plaintiffs' own unsubstantiated interpretation, ergo something akin to "He called us thieves and crooks and told them to not do business with us." When actually the Complaint leaves open the possibility, even probability, that Kaler said nothing of the sort and instead gave his opinion of the Co-op's plausibly fraught and problematic financial and business relationship with the Plaintiffs.
>
> Therefore, based on the pleadings and information provided to the Court in this case at this time, the Court does not find that Kaler's June 2023 statement was false or intentionally false, or intentionally ignored the truth, or was made with any intention of perpetuating a falsehood.

[¶27] We conclude the district court erred because it misapplied the requirements of N.D.R.Civ.P. 8(a) and the standards for determining a motion to dismiss under N.D.R.Civ.P. 12(b)(6). Rule 8(a)(1) only requires "a short and plain statement of the claim"; it does not require that the complaint contain detailed factual allegations. Yet the court demanded more than short and plain statements. By way of a few examples, the court criticized the complaint because it "does not specify the names, titles, roles, or duties" of the attendees at the board and annual meetings; does not provide names of witnesses who heard what Kaler said; does not provide details of "Kaler's involvement with the Co-op"; and does not plead facts showing what Kaler knew, including how he knew his statements were false.

[¶28] The district court also improperly demanded factual evidence to support the complaint's short and plain factual allegations. For example, the court noted "[t]here are no names, affidavits, or conformational information as to who

11

specifically was present" at the meetings; there was a "complete lack of any other source of information relating to Kaler's alleged statement" at the June meeting; the Killorans did not present "any person who did indeed hear the alleged statements at the Co-op Board meeting"; the Killorans did not provide names, "much less any affidavit, deposition transcript, letter, text, or even an email indicating that anyone actually heard the words spoken by Kaler at the April 2023 board meeting"; the Killorans failed "to provide confirmation" of what Kaler said at the June 2023 meeting; "No names of witnesses were provided by the Plaintiffs, never mind affidavits, deposition transcripts, letters, texts, or even an email indicating that anyone actually heard the words spoken by Kaler at the June 2023 meeting"; and the Killorans "entirely failed to name any specific person with knowledge of the contents of the statements made by Kaler at the April 2023 meeting." But at this stage of the proceeding, the Killorans were not required to identify who was at the meetings, identify witnesses, or submit exhibits in support of their allegations.[1]

[¶29] The district court's references to hearsay further evidence the court's misapplication of the Rule 12(b)(6) standards. The court noted, "Plaintiffs have not pled any facts showing their own direct knowledge of Kaler's statements at the April 2023 meeting." It later stated the "Plaintiffs present unconfirmed, unnamed, and unsubstantiated hearsay"; "Plaintiffs rely on hearsay as a basis for this claim"; and "the April 2023 allegation [is] *at best* unsubstantiated, unverified, and unsupported hearsay." Although a motion to dismiss may be granted if "it is clear there are no provable facts entitling the plaintiff to relief[,]" *Krile*, 2022 ND 28, ¶ 16, a party need not present supporting evidence at the pleading stage. The quantum and admissibility of evidence is not to be

---

[1] Had either party submitted affidavits, deposition transcripts, letters, texts, emails, or other exhibits and the court considered them, the motion to dismiss would have properly been treated as a motion for summary judgment under N.D.R.Civ.P. 56. *Krile*, 2022 ND 28, ¶ 11; *Nandan, LLP v. City of Fargo*, 2015 ND 37, ¶ 11, 858 N.W.2d 892 ("A motion to dismiss under N.D.R.Civ.P. 12(b)(6) is based on the pleadings, and if matters outside the pleadings are considered, the motion must be treated as a motion for summary judgment under N.D.R.Civ.P. 56.").

considered at the motion to dismiss stage; rather, the court's "scrutiny of pleadings should be deferential to the plaintiff" and the complaint "construed in the light most favorable to the plaintiff." *Id.*

[¶30] The district court further erred in not accepting the allegations in the complaint as true and construing the complaint in the light most favorable to the Killorans. The court did not accept the complaint's allegations as to what Kaler said as true. Rather, the court referred to the allegations as the Killorans' "best guess at what Kaler might have actually said." The complaint specifically alleged, "Kaler's statements against the Killoran Parties' character at the Annual Meeting and the Board Meeting were false." Rather than accept this short and plain statement as true, the court wrote "some exploration of the truthfulness of [the] language must be completed." Construing the complaint in the light most favorable to Kaler, not the Killorans, the court asked whether "there [was] a misunderstanding, or a problem with context? Was it a joke or a light off-hand remark?"

[¶31] Later, the court again declined to draw a presumption in the Killorans' favor. It stated, "Taking a broad view, perhaps maybe it could be presumed that Kaler was the long-time, well-informed, historically-aware attorney for the Co-op, but there is no basis for this presumption any more than there might be a basis to presume Kaler only represented the Co-op on a single limited legal matter." Yet all presumptions were to be made in the Killorans' favor.

[¶32] Next, the district court challenged both whether the statement was made and its truthfulness, stating, "In the final analysis, the Court must ask: Would Kaler even know the truth or falsity of the statement, if in fact he made that statement in June 2023?" Not only did the court challenge the accuracy of the allegation, the court rejected the allegation in favor of Kaler, stating "there is no showing that Kaler would have known the truthfulness of the statement when he is alleged to have made it[.]"

[¶33] Further refusing to accept the allegations in the complaint as true and construe the complaint in the light most favorable to the Killorans, the district court conducted a strawman analysis and made various "plausible" or

"reasonable" conclusions. Based on those conclusions, the court rejected the complaint's allegation, stating it "does not rule that the underlying theme (if not the exact language) of the alleged June 2023 statement was *de facto* false."

[¶34] Finally, the district court did not accept the allegations in the complaint as true and construe the complaint in the light most favorable to the Killorans when it stated:

> [T]he Plaintiffs could be misrepresenting the June 2023 statement, or they misunderstood the statement, or they simply didn't like the statement, and then reduced Kaler's statement to the Plaintiffs' own unsubstantiated interpretation, ergo something akin to "He called us thieves and crooks and told them to not do business with us." When actually the Complaint leaves open the possibility, even probability, that Kaler said nothing of the sort and instead gave his opinion of the Co-op's plausibly fraught and problematic financial and business relationship with the Plaintiffs.
>     Therefore, based on the pleadings and information provided to the Court in this case at this time, the Court does not find that Kaler's June 2023 statement was false or intentionally false, or intentionally ignored the truth, or was made with any intention of perpetuating a falsehood.

[¶35] We conclude the district court erred by not applying the appropriate standards when addressing Kaler's motion to dismiss. On our de novo review, we further conclude the complaint does not fail to state a slander claim upon which relief could be granted. The complaint alleged the general dates of the publications, the method of publication, the substance of the publications, that the publications were false and made with knowledge, and damages. Thus, the concise, non-technical complaint sufficiently informs and notifies Kaler and the court of the Killorans' slander claim. It also has not been disclosed with certainty that it is impossible for the Killorans to prove their slander claim. *Livingood v. Meece*, 477 N.W.2d 183, 188 (N.D. 1991) ("The motion should be granted only if it is disclosed with certainty the impossibility of proving a claim for which relief can be granted."). The Killorans may be able to provide testimony, witnesses, exhibits, and other evidence in support of their allegations. We reverse the court's judgment dismissing with prejudice the Killorans' claim for slander.

C

[¶36] On appeal, Kaler asserts the common-interest privilege and limited-purpose public figure doctrine apply to the Killorans' defamation claim. According to Kaler, the Killorans' pleading for slander is insufficient because the complaint fails to explicitly allege Kaler made the statements with malice, an essential element in the common-interest privilege and limited-purpose public figure doctrine. The Killorans assert neither the privilege nor doctrine apply at the Rule 12(b)(6) stage of litigation.

[¶37] Whether a statement is protected by common-interest privilege or the limited-purpose public figure doctrine is an affirmative defense. *See, e.g., Kluver v. SGJ Holdings, LLC*, 2023 ND 65, ¶ 17, 988 N.W.2d 569 (showing defendants asserted qualified privilege as defense from liability for statements made to law enforcement); *Krile v. Lawyer*, 2020 ND 176, ¶ 18, 947 N.W.2d 366 ("There is no liability for defamatory statements that are privileged." (quoting *Richmond v. Nodland*, 552 N.W.2d 586, 588 (N.D. 1996))); *Riemers v. Mahar*, 2008 ND 95, ¶ 15, 748 N.W.2d 714 (after defendant establishes public figure doctrine, a public figure must show "there is clear and convincing evidence the defamatory statement was made with actual malice"). A complaint does not need to allege facts in anticipation of an affirmative defense. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009) ("[A] plaintiff need not plead facts responsive to an affirmative defense before it is raised."); *La Grasta v. First Union Sec.*, 358 F.3d 840, 845 (11th Cir. 2004), abrogated on other grounds by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("Plaintiffs are not required to negate an affirmative defense in their complaint." (cleaned up)); 5 Fed. Prac. & Proc. Civ. § 1276, *Plaintiff's Anticipation of an Affirmative Defense*, n.6 (4th ed.) (showing cases that a plaintiff does not need to anticipate or attempt to circumvent affirmative defenses). Thus, the Killorans did not need to allege facts regarding the common-interest privilege or the limited-purpose public figure doctrine in their complaint.

[¶38] We conclude the Killorans did not need to allege facts in anticipation of the common-interest privilege or the limited-purpose public figure doctrine.

[¶39] We reverse the judgment to the extent it dismisses the slander claim.

IV

[¶40] The Killorans assert they properly pleaded a claim for IIED, and a jury should determine whether Kaler's statements constitute extreme and outrageous conduct.

[¶41] North Dakota allows claims for emotional distress arising from tort actions. *Neppel v. Dev. Homes, Inc.*, 2021 ND 5, ¶ 16, 953 N.W.2d 642. A claim for IIED requires "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress." *G.K.T. v. T.L.T.*, 2011 ND 115, ¶ 9, 798 N.W.2d 872 (quoting *Muchow v. Lindblad*, 435 N.W.2d 918, 924 (N.D. 1989)).

[¶42] This Court has explained the standard for "extreme and outrageous" conduct:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*G.K.T.*, 2011 ND 115, ¶ 11 (quoting *Muchow*, 435 N.W.2d at 924). A district court must make the initial decision of whether the alleged conduct can reasonably be considered "extreme and outrageous." *Neppel*, 2021 ND 5, ¶ 16. "[I]f the district court determines that reasonable people could differ, the question of whether the defendant's conduct is sufficiently extreme and outrageous is left to the trier-of-fact." *Id.* (quoting *G.K.T.*, ¶ 9).

[¶43] At the district court and in their appellate brief to this Court, the Killorans argue they properly pled a claim for IIED because Kaler's status as a licensed

16

attorney factors into the outrageousness of his statements. The Killorans quote *Matter of Jaynes*, 267 N.W.2d 782, 784 (N.D. 1978), stating "Public trust in the legal profession is a necessity and as a consequence lawyers traditionally have been held to a higher standard." The district court dismissed the claim, noting, "The worst the Plaintiffs might say of the statements is that they were insulting and hurt their feelings and damaged their business reputation." The court determined "reasonable people could not differ on whether the question of the [sic] Kaler's conduct is sufficiently extreme and outrageous" and the conduct "could never be found by a trier of fact to be [IIED]."

[¶44] This Court has emphasized a claim for IIED "should be judged on a case-by-case basis" as the determination of whether the alleged conduct is sufficiently outrageous or extreme varies depending on the specific facts and circumstances of each case. *Swenson v. Northern Crop Ins., Inc.*, 498 N.W.2d 174, 186 (N.D. 1993). A court does not focus exclusively on the conduct and words, but considers "the context and background in which those words and conduct occurred." *Id*. at 185.

[¶45] In *Swenson*, we held the trial court erred in granting summary judgment on a claim for IIED against an employer who made discriminatory comments about the employee's gender before demoting and isolating her. 498 N.W.2d at 182-83. We said a reasonable person would differ as to whether the employer's conduct was extreme and outrageous. *Id*. at 183. In the decision, we emphasized the employer/employee relationship as an important factor to consider because an employer has authority over the employee unlike an arm's length relationship between strangers. *Id*. at 185.

[¶46] In *Muchow*, we held a police officer's statements describing to the plaintiffs the details of their daughter's apparent suicide by drowning, while inconsiderate and unkind, did not constitute extreme and outrageous conduct. 435 N.W.2d at 924. We considered the officer's prior experience with the daughter, who indicated to the officer she would commit suicide by "walking in the river," in determining the outrageousness of the officer's statements. *Id*. at 924-25. We concluded that, although the officer's conduct "may not have been his finest hour[,]" his conduct did not rise to the level of egregious conduct necessary for an IIED claim. *Id.* at 925.

17

[¶47] Here, we cannot conclude that reasonable persons would differ as to whether Kaler's alleged statements were extreme and outrageous. In reaching our decision, we consider the context and circumstances in which Kaler's statements were made. Kaler was the Co-op's attorney; Kaler made the alleged statements during the Co-op's board and annual meetings. In this context, we agree with the district court that the alleged statements do not rise to the extreme and outrageous standard required in a claim for IIED.

[¶48] We conclude the district court did not err in dismissing the Killorans' IIED claim because the complaint failed to state a claim upon which relief could be granted. We affirm the judgment to the extent it dismisses the IIED claim.

V

[¶49] The Killorans argue they properly pleaded a claim for unlawful interference with business.

[¶50] A claim for unlawful interference with business requires the commission of "an independent tort or otherwise unlawful act of interference" by the interferer. *Berger v. Sellers*, 2023 ND 171, ¶ 49, 996 N.W.2d 329.

[¶51] After dismissing the Killorans' claims for slander and IIED, the district court dismissed the Killorans' claim for unlawful interference with business because the Killorans "fail[ed] to adequately allege an independent tort or an otherwise unlawful act of interference[.]" Because we reverse and remand the court's decision on the slander claim, the court's ground for dismissing the unlawful interference with business claim no longer applies, a potential independent tort existing. Thus, we reverse the judgment to the extent it dismisses the unlawful interference with business claim.

VI

[¶52] We have considered the parties' remaining arguments and conclude they are either without merit or unnecessary to our decision. We affirm the district court's judgment dismissing the Killorans' IIED claim; we reverse the judgment

18

dismissing the Killorans' claims for slander and unlawful interference with business; and we remand for further proceedings consistent with this opinion.

[¶53] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr